UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

TIMOTHY CULLENEN,                          :
                                           :
          Plaintiff,                       :
                                           :
          v.                               :          File No. 1:16-cv-00043-jgm
                                           :
TOWN OF ROCKINGHAM and                     :
VILLAGE OF BELLOWS FALLS,                   :
                                           :
          Defendants.                      :
_____           :

RULING ON MOTION TO COMPEL MEDIATION
OR ARBITRATION AND MOTION TO DISMISS
(Doc. 3)

I.    Introduction

      Plaintiff Timothy Cullenen ("Cullenen") commenced this action against the Town of

Rockingham ("Town") and Village of Bellows Falls ("Village") (collectively, "Defendants") in

February 2016, following his April 2013 termination as Municipal Manager for Defendants.  (Doc. 1

(Compl.).)  Cullenen alleges claims for declaratory judgment, deprivation of his constitutional rights

to due process in violation of 42 U.S.C. § 1983 and Article 4 of the Vermont Constitution, and

wrongful termination.  The claims arise from Defendants' termination of Cullenen during the term

of his three-year employment agreement.  Defendants move for an order compelling Cullenen to

participate in mediation, or in the alternative arbitration, and dismissal of his claims without

prejudice.  (Doc. 3.)  Cullenen opposes the motion.  (Doc. 5.)  Defendants did not file a reply.

      For the following reasons, Defendants' motions are granted in part and denied in part.

II.   Background

      The following facts are assumed to be true for purposes of the pending motions and are

gleaned from the complaint.  The parties signed a written employment agreement ("Agreement")

(Doc. 3-1) on April 5, 2011.[1]  Under the Agreement, Plaintiff was named the Municipal Manager for Defendants for a term to run from May 2, 2011 until May 1, 2014.  The Agreement provided that Cullenen would be subject to a probationary period of six months, which he successfully completed. The Agreement would renew automatically for one year terms unless Cullenen was terminated for reasons listed in the Agreement or either party gave sixty days' advanced written notice of an intent not to renew.  Cullenen received favorable performance reviews from both the Town of Rockingham Selectboard and Village of Bellows Falls Board of Trustees on December 7, 2011, and May 9, 2012.  Effective May 1, 2012, Cullenen received a pay raise.

In November 2012, Cullenen was the subject of a letter of complaint filed by a Village of Bellows Falls Trustee alleging he had acted in an inappropriate manner towards citizens of the Village and the Town on November 13, 2012, at a regular business meeting of the Village Board of Trustees.  His behavior was characterized as "'rude, arrogant, disrespectful [and] hubristic.'" Compl. ¶ 26.  Defendants issued a written warning to Cullenen in a November 20, 2012 letter signed by the Town Selectboard Chair and Village President, and directed Cullenen to engage in anger management counseling, which he did, and imposed a one-week suspension without pay.

In March 2013, the entire Village Board filed a second complaint alleging Cullenen engaged in "'disrespectful and belligerent' behavior and 'badgered and stonewalled the trustees'" during a meeting on February 26, 2013.  Compl. ¶ 29.  Defendants issued a written warning to Cullenen in a March 14, 2013 letter, directing him to attend weekly counseling sessions for a period of no less than ninety days, which he did.

---

[1]  The Employment Agreement was not attached to the complaint or incorporated by reference.  Because the complaint "relies heavily upon its terms and effect," the Court considers the Agreement as it is "integral" to the complaint.  Chambers v. Time Warner, Inc., 262 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).  The Court notes Cullenen did not object to Defendants' attaching the Agreement or assert it was not a true copy of the Agreement.

On April 16, 2013, Cullenen received a performance review criticizing his communication skills but noting "'his particularly off-hand comments in emails has [sic] been mostly curtailed.'" Compl. ¶ 33.  Defendants recommended the "'severity of reprimand be increased to substantially impact manager's freedom of decision making/spending and a more extended time off period without compensation be levied.'"  Id. ¶ 34.  The review concluded:  "'A vote of no-confidence was taken on April 16, 2013 and a majority of both the Selectboard and BF Trustees, vote to terminate Tim [Cullenen].'"  Id. ¶ 36.  Cullenen signed the review on April 16, and his employment was terminated by Defendants as of that date without warning, notice of cause or any meaningful opportunity to be heard.

On April 30, Cullenen wrote the Town Board Chair and Village President notifying them of his "intent to appeal [his] recent termination as Municipal Manager.'"  Compl. ¶ 46.  Defendants did not respond to his letter.

Section 19 of the Employment Agreement, titled Alternative Dispute Resolution ("ADR"), states:

> 19.1. Purpose.  The parties agree that a predetermined selection of forums and methodology will provide the most cost effective and appropriate manner in which to resolve any disputes arising under this Agreement.  Furthermore, the use of alternative dispute resolution methods will be in the best interest of all parties, demonstrates good faith, and is consistent with the spirit and objectives of this Agreement.
> 19.2. Mediation.  If a dispute arises out of or relates to the Agreement, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Rules.
> 19.2. Arbitration.  Any dispute arising out of or relating to this Agreement, its termination or the breach thereof, which is not resolved through negotiations or mediation efforts as required in Section 19.2 shall be resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules.  The parties to any such arbitration shall have the right to discovery consistent with Federal Rules of Civil Procedures [sic] 26 through 37.  In addition to other forms of relief, the arbitrator may grant injunctive relief.  The decision of the arbitrator shall be final, conclusive, and binding on the parties, and

3

the judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction.

(Doc. 3-1 at 6.)  The ADR section also states disputes shall be heard by a single mediator or arbitrator, all alternative dispute resolution efforts shall occur in Rockingham, Vermont, and the parties would equally share and pay the administrative costs and expenses of mediation or arbitration as incurred.  Id.  The Agreement concludes with a bold section above the signature lines stating:

> "ACKNOWLEDGMENT OF ARBITRATION.  I understand that this agreement with the Town of Rockingham and Village of Bellows Falls contains an agreement to arbitrate.  After signing this document, I understand that I will not be able to bring a lawsuit concerning any dispute that may arise which is covered by the arbitration agreement, unless it involves a question of constitutional or civil rights.  Instead, I agree to submit any such dispute to an impartial arbitrator."

Id. at 8.

III.     Discussion

Defendants move for an order compelling Cullenen to participate in mediation, or in the alternative arbitration, and for dismissal of his claims without prejudice.  (Doc. 3.)  They argue the enforceable employment agreement requires mediation of all Cullenen's claims and the Court should dismiss his claims to allow the opportunity for appeal.  Cullenen opposes the motion arguing his constitutional claims are exempt from both the compulsory mediation and arbitration clauses of the Agreement.  (Doc. 5.)  If the Court determines the Agreement "bars plaintiff from pursuing immediate relief in this Court," Cullenen requests the Court stay his non-constitutional claims rather than dismissing them without prejudice.  Id. at 6.  Defendants did not file a reply.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), was enacted in response to judicial hostility to arbitration.  It provides:  "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

4

contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has noted this "text reflects the overarching principle that arbitration is a matter of contract [a]nd . . . courts must rigorously enforce arbitration agreements according to their terms, including terms that specify <u>with whom</u> the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." <u>Am. Express Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 2309 (2013) (internal quotation marks and citations omitted). The FAA requires courts to stay court proceedings on issues subject to arbitration "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, courts must compel arbitration when a valid arbitration agreement exists.

To compel arbitration, the Court must first find an arbitration agreement exists between the parties. If an agreement is found to exist, the court must then decide whether the dispute at issue falls within the scope of the agreement. To determine whether the parties agreed to arbitrate, courts apply state law principles governing contract formation. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995). In applying general state-law principles of contract to the interpretation of an arbitration agreement under the FAA, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." <u>Volt Info. Scis., Inc. v. Leland Stanford Junior Univ.</u>, 489 U.S. 468, 475-76 (1989).

Here, there is no dispute Vermont law applies to the Employment Agreement. There is no argument the present dispute--as all claims stem from Defendants' termination of Cullenen as Municipal Manager--does not fall within the scope of the ADR section of the Agreement. Cullenen argues negotiation has been unsuccessful and his constitutional claims are not subject to mandatory

mediation or arbitration as a matter of public policy,[2] statutory law, and the Agreement.  (Doc. 5 at 2 & n.1.)  The Agreement contains the Acknowledgment of Arbitration which excludes questions of constitutional or civil rights from the agreement to arbitrate (Doc. 3-1 at 8) and the Vermont Arbitration Act, Vt. Stat. Ann. tit. 12, §§ 5651-5681, also limits arbitration agreements from barring access to the court to enforce constitutional or civil rights, Vt. Stat. Ann. tit. 12, § 5653.  Defendants do not dispute that Cullenen's constitutional claims are not arbitrable.  (Doc. 3 at 8.)

Cullenen, however, does not point to any authority for his assertion his constitutional claims are not subject to non-binding mediation.  The scope of the mediation section of the Employment Agreement extends to a dispute that "arises out of or relates to this Agreement, or a breach thereof," that "cannot be settled through negotiation."  (Doc. 3-1 at 6.)  The Agreement continues "the parties agree to try in good faith to settle the dispute by mediation administered by the American Arbitration Association."  (Doc. 3-1 at 6 (emphasis added).)  Indeed, the arbitration clause of the Agreement states any dispute "which is not resolved through negotiations or mediation efforts as required in [the mediation section] shall be resolved by arbitration administered by the American Arbitration Association."  Id.

The Court determines, in accordance with the parties' agreement contained in the Employment Agreement, all Cullenen's claims must proceed to mediation under Section 19.2 of the Agreement, since the dispute apparently cannot be settled through negotiation.  If his claims are not resolved through mediation efforts, the claims not involving a question of constitutional or civil

---

[2]  The Vermont Supreme Court "has long recognized the importance of arbitration as an alternative to litigation for the efficient resolution of disputes."  UniFirst Corp. v. Junior's Pizza, Inc., 46 A.3d 887, 889 (Vt. 2012) (internal quotation marks and citation omitted).

rights must be resolved by arbitration.[3]   Accordingly, Defendants' motion to compel mediation is granted.  If mediation is unsuccessful, the parties shall proceed to arbitration of the claims subject to the arbitration agreement.  Cognizant of Cullenen's request, the Court stays his claims pending the conclusion of the mediation process; Defendants' motion to dismiss Cullenen's claims without prejudice is denied.  See 9 U.S.C. § 3.

IV.    Conclusion

For the reasons discussed above, Defendants' motion to compel mediation, or in the alternative arbitration, and to dismiss Plaintiff's claims without prejudice (Doc. 3) is granted in part and denied in part.  The parties shall participate in mediation in good faith; if disputes remain, the parties shall participate in arbitration.  Cullenen's claims are stayed pending the conclusion of the mediation process.  The parties shall keep the Court informed of the progress of mediation and arbitration, if necessary.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of November, 2016.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

---

[3]  The Court notes under the FAA, Vermont law and the Commercial Arbitration Rules of the American Arbitration Association, an arbitration hearing may proceed without the participation of an unwilling party.  See UniFirst Corp., 46 A.3d at 890.